UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **DOROTHY BOSTON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-05-54** |
| | § | |
| **MICHAEL ASTRUE,** | § | |
| **Commissioner of the Social Security** | § | |
| **Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiff's action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of the Social Security Administration denying her claim for Social Security benefits. Plaintiff also has filed a Motion to Consider New and Material Evidence (Dkt. #10). After considering the motions, response and applicable law, the Court is of the opinion that Plaintiff's Original Complaint should be DISMISSED and her Motion to Consider New and Material Evidence should be DENIED.

**Factual and Procedural History**

Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c, on September 24, 2001.[1] In her claim for benefits, Plaintiff alleged that she became disabled on July 13, 2001 due to gastroenterological reflux disease ("GERD"), gall bladder removal, back and knee pain and depression.[2] Her claim was denied initially and on reconsideration.[3] She timely requested an administrative hearing, which was held on March 2, 2004

---

[1] Administrative Record (hereinafter referred to as "AR") 17.

[2] *Id.*

[3] AR 26, 36.

in Corpus Christi, Texas before Administrative Law Judge ("ALJ") Bernard McKay.[4] Plaintiff was represented by counsel at the hearing.[5]

Plaintiff was 36 years old at the time of the hearing.[6] She had no relevant past work history, but graduated from high school and completed a business computer course while in prison. Agnes Gerner, a vocational expert ("VE"), was called to testify at the administrative hearing. Based on the hypothetical question posed by the ALJ, the VE stated that occupations did exist in the state and the national economy in significant numbers which could be performed by Plaintiff, including house cleaner, bench assembler, and agricultural sorter/grader.[7]

After considering the hearing testimony and Plaintiff's medical records, the ALJ issued his opinion on June 21, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act.[8] The ALJ followed the five-step sequential evaluation required under 20 CFR § 404.1520. Specifically, he found that Plaintiff had not engaged in substantial gainful activity since the date of her disability. She did have medically determinable severe impairments, including diagnoses of major depressive disorder, post-traumatic stress disorder, narcissistic personality disorder, bipolar disorder and hepatitis C.[9] He noted, however, that the hearing testimony as well as the medical records dealt almost exclusively with her mental impairments. He concluded that

---

[4] AR 54.

[5] AR 874.

[6] AR 877.

[7] AR 908–09.

[8] AR 14–22.

[9] AR 18.

GERD and gall bladder removal were not an issue in the determination of disability.[10] At the third step, the ALJ found that none of Plaintiff's impairments met or equaled a listed impairment in Appendix 1, Subpart P, Regulations No. 4. Because Plaintiff had no past relevant work experience, the ALJ proceeded to consider step five–whether Plaintiff could perform any work occupations existing in the national economy with her residual functional capacity.[11] The ALJ's determination under step five is the subject of Plaintiff's appeal in this case.

The ALJ acknowledged that Plaintiff's depression "would significantly affect her ability to engage in work related activities."[12] The record established that the Plaintiff's depression "resulted in moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence, or pace; and no episodes of deterioration or decompensation of extended duration."[13] However, he was not persuaded that Plaintiff's impairments were as severe as she alleged. He noted her tendency to exaggerate her symptoms and pointed to the extensive records of Gulf Bend Mental Health Center, which indicated that she was "comfortable being the focus of attention from mental health counselors."[14] Additionally, he found that her "minimal progress" with medications could also be attributed to some non-compliance. He agreed with Dr. Paul Hamilton's opinion that Plaintiff's problems may stem from a desire to have others do for her. He concluded that Plaintiff retained a residual functional capacity to lift/carry 20 pounds occasionally or 10 pounds frequently, with moderate

---

[10] AR 19.

[11] AR 20.

[12] *Id.*

[13] *Id.*

[14] *Id.*

limitations mentally in understanding and following complex instructions and in maintaining concentration, persistence and pace.[15] Therefore, based on the Plaintiff's age, education, work experience and residual functional capacity, as well as the opinion of the VE, Medical Vocational Rule 202.20 indicated that a finding of "not disabled" was warranted.[16] *See* 20 C.F.R. Pt. 404, Subpart P, App. 2.

## Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two inquiries: (1) whether substantial evidence in the record the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n.2 (5th Cir. 1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court must review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for that of the Commissioner. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support

---

[15] *Id.*

[16] AR 21.

the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations require the Commissioner to evaluate disability claims according to the following sequential five-step process:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;
(2) a claimant will not be found to be disabled unless he has a "severe impairment;"
(3) a claimant whose impairment meets or is equivalent to an impairment listed in the Appendix to the Regulations ("the Listings") will be considered disabled without the need to consider vocational factors;
(4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and
(5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that she suffers from a mental or physical impairment that not only renders her unable to perform her previous work, but, given her age, education, and work experience, prevents her from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a

5

specific job vacancy exists for her, or whether she would be hired if she applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that she can no longer perform her previous job, the burden shifts to the Commissioner to show that there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps, and the Commissioner bearing the burden on the fifth step. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Discussion

Plaintiff argues that the ALJ failed to properly consider each of Plaintiff's mental impairments in assessing her residual functional capacity ("RFC"), and how each, in combination, would affect her ability to obtain and maintain substantial gainful employment. In his opinion, the ALJ acknowledged that Plaintiff had numerous psychiatric evaluations wherein she had been diagnosed with a variety of mental impairments. The ALJ did primarily rely on depression when making the disability determination in his opinion, but this reliance was not erroneous. At the hearing, Plaintiff testified that the only problem keeping her from work was her depression, and the only mental impairment upon which Plaintiff based her claim for benefits was depression.[17] Also, a review of the medical records revealed that Plaintiff was consistently diagnosed with some form

---

[17] AR 880.

of depression by each treating physician.[18]

Additionally, contrary to Plaintiff's contention that the ALJ only addressed Plaintiff's depression, he fully assessed all of Plaintiff's medical records and testimony, which included each various diagnosis. The ALJ considered Plaintiff's hospitalizations in June and July 2002. In June, Plaintiff admitted herself to North Bay Hospital after a suicide attempt and complained of mood swings, insomnia, weight gain and social withdrawal.[19] Her mental status evaluation revealed a patient with sad facial expression, orientation to person, place and time, articulate speech, with the ability to organize a comprehensive history. She had no delusions and her thought processes were logical and goal-oriented. Dr. John Hopper of North Bay Hospital diagnosed her with Major Depression.[20]

In July, Plaintiff was admitted to the hospital for four days with symptoms of major depression or bipolar II mixed.[21] Plaintiff complained of crying spells, sleep disturbance, and auditory hallucinations.[22] Her mental status evaluation revealed that she was neatly groomed, oriented to person, place and time, her thought processes were logical and goal-oriented, her recall was intact and her intelligence above normal.[23] Upon discharge, Dr. Hopper noted "[Plaintiff's]

---

[18] For example, Dr. Johnnie Fisher diagnosed her with Dysthymia in a psychiatric evaluation in February 2002. AR 184–86. Also, at both her June and July 2002 hospitalizations her final diagnoses were Major Depression and Schizo-Affective Depressed, respectively. AR 159, 141.

[19] AR 158–59.

[20] *Id.*

[21] AR 141.

[22] AR 149.

[23] AR 149–50.

reported severe insomnia and severe depression with tearfulness was not necessarily apparent to the staff on this admission." Further, "the patient rapidly established a normal sleep pattern and did not appear overly withdrawn. The patient was well enough to be discharged."[24]

The ALJ also discussed the Texas Rehabilitation Commission's Dr. Cecil Childers' psychiatric evaluation of Plaintiff in July 2002. Plaintiff stated that she had been severely depressed since her father died in 1999 and cried everyday. After making many findings similar to Dr. Hopper relating to grooming, orientation, memory, concentration and intelligence, Dr. Childers diagnosed Plaintiff with Major Depression.[25]

In his opinion, the ALJ also assessed the implications of her narcissistic tendencies, relying on Dr. Paul Hamilton's evaluation of Plaintiff performed on June 12, 2002. He stated:

> Mrs. Boston exhibits a rather egocentric view of the world. . . Her sense of entitlement may also trigger a response style to stress in which she over-reports her symptoms. Thus, while Mrs. Boston is experiencing some depression, she may also be exaggerating the degree to which these symptoms are occurring in an effort to gain the attention and help that she believes she needs. . . For the most part, she appears to have sufficient psychological resources to cope adequately with the demands being imposed on her by internal and external events in her life. She appears to be capable of tolerating frustration and to persevere in the face of obstacles placed in her path.[26]

He concluded that Mrs. Boston would probably respond well to a combination of interventions, including psychiatric monitoring of her medications and psychotherapy aimed at gaining coping skills.[27]

---

[24] AR 141.

[25] AR 151–55. *See also* MHMR diagnosis consistent with other evaluations. AR 364–67.

[26] AR 671–72.

[27] *Id.*

8

The ALJ further relied on the opinion of the VE at the hearing. The VE found that based on the hypothetical posed to her, which did not encompass any particular mental impairment, that there would be occupations in the economy which someone with Plaintiff's limitations could perform. Specifically, the ALJ asked the VE:

> I want you to assume an individual of Miss Boston's age, mid 30's, education which is high school level, and no work experience of any significance. . . A physical ability to lift up to ten pounds frequently and up to 20 pounds occasionally, with a, also with a moderate mental limitation in understanding, remembering and carrying out detailed instructions, and also with moderate limitation in maintaining concentration, persistence and pace. Moderate I'm defining as a below average, noticeably below average ability, but nevertheless satisfactory in, in that particular area. Would there be any work occupations for a person of such a profile?[28]

The VE responded that several light, unskilled jobs, which involve simple instructions could be performed by Plaintiff based on that hypothetical. Specifically, the VE found that within the Dictionary of Occupational Titles, house cleaner, bench assembler and agricultural grader/sorter could be performed by Plaintiff based on her limitations.[29]

The ALJ evaluated all of the medical evidence and testimony and found that while Plaintiff clearly has mental impairments, he was not persuaded that her impairments were as severe as she alleged. Taking into account the various diagnoses, he concluded that Plaintiff was capable of performing certain light, unskilled occupations within the national economy. Thus, the ALJ had substantial support for his conclusion and properly considered Plaintiff's mental impairments, based on the medical evidence and the hearing testimony, in determining Plaintiff's RFC and disability status.

Plaintiff also asserts that the ALJ erred by not addressing Plaintiff's substance abuse disorder

---

[28] AR 907.

[29] AR 908–09.

in his opinion, despite questioning Plaintiff about this subject at the hearing. Specifically, Plaintiff contends that the ALJ completely failed to make a required finding relating to alcohol or drug addiction ("DAA") under Social Security regulations 20 C.F.R. §§ 416.935 and 404.1535. *See* 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J); *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999). The regulation provides: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." The regulations preclude a finding of disability if DAA is a contributing factor material to the disability. *Id.* at 497. However, under the plain language of the regulation, consideration of whether DAA is a contributing factor material to the disability is only necessary after the ALJ finds the claimant disabled at step five. *Id.* at 497–99; *Wheat v. Barnhart*, 318 F. Supp. 2d 358, 363 (M.D. La. 2004).

Because the ALJ did not find Plaintiff disabled at step five, it was not necessary for him to consider if there was medical evidence consistent with DAA. Further, the fact that the ALJ did not make a finding related to Plaintiff's drug and alcohol problems indicates that he did not believe Plaintiff had a DAA. The ALJ asked numerous questions about Plaintiff's current and past drug and alcohol use. She repeatedly stated that she had been off drugs and alcohol since 2002 and was tested monthly by her parole officer for these substances.[30] The negative results of these monthly, random drug screenings corroborated Plaintiff's testimony that she no longer uses drugs and alcohol. The ALJ did not err by not making a finding on Plaintiff's DAA, and in fact it would have been futile for him to do so after already determining that Plaintiff was not disabled.

Plaintiff also seeks to introduce a report completed by Dr. Robert Lyman on February 10,

---

[30] AR 887, 896.

2005.[31]  On judicial review, the court generally cannot consider any evidence that is not already part of the administrative record. *Lovett v. Schweiker,* 667 F.2d 1, 2 (5th Cir. 1981). When such evidence is presented, the court considers the evidence only to determine whether remand is appropriate under sentence six of 42 U.S.C. § 405(g).  Under sentence six, in order to justify a remand to consider additional evidence, it must be new, material, and good cause must be shown for the failure to incorporate the new evidence into the record of the administrative proceeding. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).  Evidence is not material if there is no reasonable possibility that it would have changed the outcome of the Commissioner's decision.  *Id.*  Moreover, the evidence is not material if it does not relate to the time period for which benefits were denied or relates solely to a subsequent deterioration of a previously nondisabling condition. *Haywood v. Sullivan*, 888 F.2d 1463, 1471–72 (5th Cir. 1989).

The Court does not find that Dr. Lyman's assessment is material because it is generally consistent with the determinations the ALJ has already made.  The ALJ found that Plaintiff had moderate mental limitations in understanding, remembering and carrying out detailed instructions and in maintaining concentration, persistence and pace. Moderate meaning "below average, noticeably below average ability, but nevertheless satisfactory in, in that particular area."[32]  Dr. Lyman found Plaintiff's abilities and aptitude to perform the necessary tasks of unskilled work fair to good.  Fair meaning "ability to function in this area is seriously limited, but not precluded."[33] Plaintiff's fair to good ratings related to her ability to perform unskilled work is consistent with the ALJ's characterization of her mental limitations.  Further, the evaluation was aimed at assessing a

---

[31]  Dkt. #10, Ex. A.

[32]  AR 907.

[33]  Dkt. #10, Ex. A.

patient's mental abilities "independent of alcoholism and drug addiction," which indicates that Plaintiff obtained this evaluation to rebut the ALJ's potential determination that drug or alcohol addiction was a contributing factor material to her disability.  Because the ALJ did not make this finding, the Court finds that this new evidence would not have affected the ALJ's decision.

## Conclusion

The Court finds that the Commissioner's decision is supported by substantial evidence in the record and the proper standards were used to evaluate the evidence.  Thus, Plaintiff's action is DISMISSED and her Motion to Consider New and Material Evidence (Dkt. #10) is DENIED.

It is so ORDERED.

SIGNED this 29th day of October, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE